No. 21-3073

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

*Plaintiff - Appellee*,

— v. —

ROGER DALE ANDERSON

*Defendant - Appellant*.

On Appeal from the United States District Court
for the Southern District of Ohio

**DEFENDANT-APPELLANT
ROGER DALE ANDERSON'S PETITION FOR
PANEL REHEARING OR EN BANC REHEARING**

Ronald W. Chapman II, Esq., LL.M. (P73179)
1441 W. Long Lake Rd., Ste. 310
Troy, Michigan 48098
T: (248) 644-6326
F: (248) 644-6324
RWChapman@ChapmanLawGroup.com

*Counsel of Record for Defendant – Appellant
Roger Dale Anderson*

Defendant, Roger Anderson, M.D. ("Dr. Anderson"), by and through counsel, Ronald W. Chapman II, files this Petition for Panel Rehearing and En Banc Rehearing before the Sixth Circuit. For the reasons set forth below, Panel Rehearing and En Banc Rehearing are necessary pursuant to Rule 35(a) and Rule 40 of the Federal Rules of Appellate Procedure. Fed. R. App. P. 35(a); Fed. R. App. P. 40.

## I. <u>BACKGROUND</u>

On April 17, 2023, a panel of three Sixth Circuit justices issued their opinion affirming Dr. Anderson's conviction. Doc. 44-2. The panel rejected all three of Dr. Anderson's arguments, including 1) the district court's failure to include jury instructions that communicated Dr. Anderson's subjective good faith when prescribing controlled substances; 2) the improper admission of Timothy E. King's ("Dr. King") expert testimony; and 3) the sufficiency of the evidence used to convict Dr. Anderson. *Id.* The panel unanimously rejected Dr. Anderson's latter two arguments. *Id.* at 21. One member of the panel, however, dissented with respect to the jury instructions, finding the instructions are at odds with *Ruan* because they failed to substantially cover the "knowledge or intent" necessary for a conviction under 21 U.S.C. § 841. *Id.* at 21-23.

## II. STANDARD FOR PANEL REHEARING AND EN BANC REHEARING

For panel rehearing, the petitioner must state, with particularity, each point of law or fact that he believes the Court has overlooked or misapprehended, and he must present arguments in support of his petition. Fed. R. App. P. 40(a)(2).

For en banc rehearing, the petitioner must show that: (1) en banc consideration is necessary to secure or maintain uniformity of the court's decisions; or (2) the proceeding involves a question of exceptional importance. Fed. R. App. P. 35(a).

Dr. Anderson contests the majority decision on the jury instructions given at trial. Specifically, he argues below that the majority wrongfully found the jury instructions "substantially covered" *Ruan's* requirement that the mens rea of *knowingly* and *intentionally* apply to the "except as authorized" clause in § 841(a). *Ruan v. United States*, 142 S. Ct. 2370, 2375 (2022).

This is the Sixth Circuit's first decision on the jury charge for § 841(a) following the Supreme Court's opinion in *Ruan.* So, while en banc rehearing is not necessary to maintain uniformity with this Court's existing decisions, it is necessary to ensure this decision does not run afoul of *Ruan.* An en banc rehearing should also be favored because, as one of the first post-*Ruan* decisions in this circuit, this decision will set forth the foundation for subsequent decisions, making it exceptionally important. An en banc rehearing is also appropriate because this is an issue that all circuits have struggled with, which is why the Supreme Court granted

certiorari. As this circuit and others continue to traverse *Ruan*, a thoughtfully crafted en banc opinion will prove greatly beneficial.

Alternatively, if the Court finds that en banc rehearing is not appropriate, Dr. Anderson respectfully asks this Court to grant panel rehearing.

## III. REASONS FOR GRANTING THE PETITION

In charging the jury, Dr. Anderson requested the district court include a good faith instruction, instructing the jury that to find him guilty of unlawfully prescribing controlled substances they had to find he prescribed without "good intentions in the honest exercise of best professional judgment as to a patient's need. [] [This] means the doctor acted in accordance with what he believed." Doc. 44-2, at 10 n.4. This instruction advanced a subjective standard of good faith, "requiring jurors to acquit [] [Dr. Anderson] if they found that he might have held a personal belief that such prescriptions would benefit his patients." *Id.* at 23 (White, H.N. dissenting). Though this instruction does not include the words "knowingly and intentionally", this Court found that it nonetheless "performs the same function as the 'knowledge or intent' requirement identified by the Supreme Court.". *Id.* at 11 ("*Ruan III*, although it lacks perfect clarity, implies that a properly qualified subjective good faith instruction performs the same function as the 'knowledge or intent' requirement identified by the Supreme Court."). Yet, the Court held that because this instruction was "substantially covered" by the jury instructions issued by the district court, the

district court did not abuse its discretion in excluding the good faith instruction requested by Dr. Anderson. *Id.* at 12-13.[1]

In its decision, the Court specifically held that:

> The instruction given to the jury specifically covers the holding of *Ruan*, by referring continuously to the 'knowledge of the defendant,' his 'deliberate ignorance,' and if he 'knew' that the prescriptions were dispensed illegitimately. [] Such terms go beyond an objective view of the 'usual course of professional practice' and instead direct the jury's attention to Anderson's subjective mindset in issuing the prescriptions.

*Id.*

The Court added "[t]he instructions given by the court, though not expressed in the way Anderson requested, substantially cover the concept of knowledge through the description of deliberate ignorance and the juxtaposition of 'knowledge' with '[c]arelessness, negligence, or foolishness.'" (citation omitted). *Id.* Yet, repeating the *same* words but in the *wrong way* does nothing to move the instruction any closer to the requirements set forth in *Ruan*.

The jury instructions delivered by the district court "[g]rammatically [] link[ed] the mens rea element to the preceding element describing the actus reus of dispensing the controlled substance, but not to the 'except as authorized' exception."

---

[1] Doc. 44-2, at 9 ("We review a challenge to the trial court's denial of a requested jury instruction for abuse of discretion and will reverse only if the denied instruction was: '(1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concern[ed] a point so important in the trial that the failure to give it substantially impair[ed] the defendant's defense.'") (internal quotation marks and citations omitted).

*See United States v. Xiulu Ruan*, 56 F.4th 1291, 1297 (11th Cir. 2023). That is, the

jury instructions read:

> First, the defendant *knowingly* or *intentionally* dispensed or distributed a Schedule II controlled substance, including fentanyl, Adderall, oxycodone and hydrocodone; and,
>
> Second, that the defendant, Dr. Anderson, prescribed the drug without a legitimate medical purpose and outside the course of professional practice.

Doc. 89, at 88.

The words "knowingly or intentionally" are linked to the first element of the

offense, the dispensation or distribution of a controlled substance, and there is a clear

and intentional divide disconnecting the requirement of mens rea from the latter

charge: that the controlled substance be prescribed without a legitimate medical

purpose and outside the course of professional practice. *Id.* Even as the district court

continued to read the instructions, it again linked the words "knowingly and

intentionally" to "distribut[ing] a Schedule II controlled substance[]". *Id.* at 88-89.

Its later instructions faring no better, as it returned to the latter element of "legitimate

medical purpose and outside the course of professional practice", it again omitted

the words "knowingly and intentionally". *Id.* at 90, ("Federal law authorizes

registered medical practitioners to dispense a controlled substance by issuing a

lawful prescription. Registered practitioners are exempt from criminal liability if

they distribute or dispense controlled substances for a legitimate medical purpose while acting in the usual course of professional practice.").

The jury instructions further failed to connect "knowingly and intentionally" to "except as authorized" under § 841(a) because the instructions used an objective standard in defining what falls within the usual course of professional practice. "The term usual course of professional practice means that the practitioner has acted in accordance with the standard of medical practice *generally recognized and accepted in the United States.*" Doc. 89, at 91; *See United States v. Heaton*, 59 F.4th 1226, 1241 (11th Cir. 2023) (holding "the jury was instructed that '[w]hether Dr. Heaton dispensed the controlled substances 'outside the usual course of professional practice' is to be judged objectively. Because this instruction allowed the jury to convict Heaton without considering whether he knowingly or intentionally issued prescriptions outside the usual course of professional practice, it was erroneous under *Ruan*.'"). And the Court's "passing reference to [] [deliberate ignorance] [] is inadequate" to resolve this issue. *See Xiulu Ruan*, 56 F.4th at 1297. That is, like in *Ruan III*, a passing reference to an "imprecise proxy for knowledge", *Id.*, is insufficient to "substantially cover" the mens rea required to convict post-*Ruan*. *See* Doc. 89, at 90-91 ("If you are convinced that the defendant deliberately ignored a high probability that the controlled substance was distributed or dispensed without a legitimate medical purpose in the usual course of professional practice, then you

may find that the defendant knew that this was the case."); *see* Doc. 44-2, at 22

("Yet, the second element does not depend on perceiving or ignoring probabilities. Anderson either understood and intended to prescribe controlled substances without a legitimate medical purpose in the usual course of professional practice, or he did not."). This is especially the case here, where the district court repeatedly linked the words "knowingly and intentionally" to the act of dispensing or distributing a controlled substance, separating this requirement from the "except as authorized" clause of § 841(a). This is why the Court's reliance on *United States v. Damra*, 621 F.3d 474 (6th Cir. 2010) is misplaced. Doc. 44-2, at 13.

There, the defendant was convicted for tax evasion under 26 U.S.C. § 7201. The jury instructions read, in part:

> In order to sustain its burden of proof for the crime of willfully attempting to evade or defeat a tax as charged in Count 2 of the indictment, the government must prove the following three (3) essential elements beyond a reasonable doubt:
>
> One: A substantial income tax was due from Applied Innovative Management, Inc. (AIM), a corporation owned and controlled by the Defendant, in addition to that declared on the defendant's tax return;
> Two: The defendant attempted to evade or defeat this additional tax as detailed in the indictment; and
> Three: In attempting to evade or defeat such additional tax, Defendant acted willfully.

Case No. 1:06-cr-00367-PAG, Doc. 60, at 24.

As the panel here observed, the *Damra* court found that, in the *tax evasion* context, a good faith instruction was substantially covered by the court's instruction that the defendant had to have acted voluntarily and deliberately to be found guilty. Doc. 44-2, at 13 (citing *Damra*, 621 F.3d at 502). The difference between this case and *Damra*, however, is that in *Damra*, there was only a single element, the second one (i.e., evading the additional tax), that had to have been willfully performed by the defendant. Case No. 1:06-cr-00367-PAG, Doc. 60, at 24. And the district court's instructions clearly and specifically identified that this is the element that must be proven willfully. *Id.* ("In attempting to evade or defeat such additional tax, Defendant acted willfully."). Here, the jury had to find that Dr. Anderson *knowingly* and *intentionally* violated both elements of § 841(a). Doc. 44-2, at 10 (holding "…the mens rea standard of 'knowingly or intentionally' applies to the entirety of § 841(a)—including the 'except as authorized' clause."). Further, unlike *Damra*, the specific words "knowingly and intentionally" were not clearly linked to the latter clause of the statute, "except as authorized". *See* Doc. 89, at 88.

Therefore, even assuming the Court was correct that "[t]he instruction given by the [district] court, though not expressed in the way Anderson requested, substantially cover[ed] the concept of knowledge through the description of deliberate ignorance and the juxtaposition of 'knowledge' with '[c]carelessness, negligence, or foolishness;'", Doc. 44-2, at 12-13, it did so only as it relates to

dispensing or distributing a controlled substance, and not as it relates to "except as authorized" (i.e., not for legitimate medical purpose and outside the course of professional practice). *See* Doc. 89, at 88. This means that the charge given to the jury empowered them to convict Dr. Anderson *solely* because he was prescribing inconsistent with "the standard of medical practice generally recognized and accepted in the United States", Doc. 89, at 91, irrespective of whether he still believed he was prescribing for a legitimate medical purpose. *See Heaton*, 59 F.4th at 1241.

Repeating the *same words* in the *same way* only serves to reinforce those words in that specific context. Here, that context was the jury had to find Dr. Anderson *knowingly* and *intentionally* dispensed or distributed a controlled substance. Doc. 89, at 88-89. "[B]y [the district court] referring continuously to the 'knowledge of the defendant'" in this context, Doc. 44-2, at 12, it only served to further reinforce the divide between the two elements of § 841(a): that to find Dr. Anderson guilty, the jury only had to find that he *knowingly* and *intentionally* dispensed controlled substances, but that this requirement of mens rea did not extend to "except as authorized".

## IV. CONCLUSION

For these reasons, Dr. Anderson respectfully asks this Court to either grant

panel rehearing or an en banc rehearing.

Respectfully submitted,
CHAPMAN LAW GROUP

Dated:  May 2, 2023

/s/ *Ronald W. Chapman II*
Ronald W. Chapman II, Esq., LL.M.
(P73179)
*Attorney for Defendant-Appellant Anderson*
*Admitted PHV*
1441 W. Long Lake Rd., Ste. 310
Troy, MI  48098
T: (248) 644-6326
F: (248) 644-6324
RWChapman@ChapmanLawGroup.com

## PROOF OF SERVICE

I hereby certify that on May 2, 2023, I presented the foregoing paper to the Clerk of the Court for filing and uploading to the ECF system, which will send notification of such filing to the attorneys of record listed herein and I hereby certify that I have mailed by US Postal Service the document to any involved non-participants.

/s/ *Ronald W. Chapman II*
Ronald W. Chapman II, Esq., LL.M.
(P73179)
*Attorney for Defendant-Appellant Anderson*
RWChapman@ChapmanLawGroup.com

# Attachment A

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

<table>
<tr><td>Deborah S. Hunt<br>Clerk</td><td>100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988</td><td>Tel. (513) 564-7000<br>www.ca6.uscourts.gov</td></tr>
</table>

Filed:  April 17, 2023

Mr. Ronald W. Chapman II
Chapman Law Group
1441 W. Long Lake Road
Suite 310
Troy, MI 48098

Ms. Alexis J. Zouhary
Office of the U.S. Attorney
221 E. Fourth Street, Suite 400
Cincinnati, OH 45202

Re:  Case No. 21-3073, *USA v. Roger Anderson*
Originating Case No. : 2:19-cr-00067-1

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc:  Mr. Richard W. Nagel

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0073p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

ROGER DALE ANDERSON,

*Defendant-Appellant*.

> No. 21-3073

———————————

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:19-cr-00067-1—Algenon L. Marbley, District Judge.

Decided and Filed:  April 17, 2023

Before:  GIBBONS, WHITE, and READLER, Circuit Judges.

———————————

### COUNSEL

**ON BRIEF:**  Ronald W. Chapman, II, CHAPMAN LAW GROUP, Troy, Michigan, for Appellant.  Alexis J. Zouhary, UNITED STATES ATTORNEY'S OFFICE, Cincinnati, Ohio, for Appellee.

The court delivered a PER CURIAM opinion.  WHITE, J. (pp. 21–23), delivered a separate opinion concurring in part and dissenting in part.

———————————

### OPINION

———————————

PER CURIAM. Dr. Roger Anderson was convicted of one count of conspiracy to distribute controlled substances, eight counts of unlawful distribution of controlled substances, and one count of healthcare fraud after an eight-day jury trial.  On appeal, he challenges the sufficiency of the evidence supporting his convictions, the district court's refusal to give a good

faith jury instruction, and the admission of the government's expert's testimony. For the reasons that follow, we affirm.

## I.

## A.

Dr. Roger Anderson practiced as a licensed physician in Marietta, Ohio, where he specialized in infectious diseases and internal medicine. He split his time between Marietta Memorial Hospital, where he practiced both inpatient and outpatient medicine, and Marietta Medical, an independent practice he founded focusing on infectious diseases. As a physician registered with the Drug Enforcement Agency ("DEA"), Anderson was authorized to prescribe Category II through V controlled substances.

In early 2015, the DEA received a tip from a local pharmacist that Anderson was seeing patients who had been discharged by other physicians for non-compliance reasons. The pharmacist was one of several in the area who had grown concerned about Anderson's prescribing practices relating to pain medications. This tip prompted the DEA to launch an investigation into Anderson. During its investigation, the DEA received information from the State Medical Board of Ohio about suspicious prescriptions that Anderson had written. The Board expressed concern that Anderson was not prescribing in the usual course of practice or for a legitimate medical purpose. Separately, one of Anderson's patients contacted the local sheriff's office, voicing his concern that he sometimes would not get to see Anderson at his appointments and would occasionally retrieve his prescriptions from the receptionist rather than from Anderson himself. The sheriff's office put the patient in touch with the DEA.

The DEA asked, and the patient agreed, to become a confidential source. Outfitted with a recording device, the confidential source visited Anderson's practice a total of eight times. In the first encounter, the confidential source told Anderson that he was "in full-blown withdrawal," but Anderson nevertheless wrote him a prescription for Vicodin. DE 86, Trial Tr. V, Page ID 1951. In a subsequent visit, the confidential source picked up a prescription for Vicodin without having first seen Anderson.

No. 21-3073                    *United States v. Anderson*                    Page 3

In February 2016, the DEA executed a search warrant and seized various documents from Marietta Medical, including medical files, prescriptions, and appointment and payment records. In March 2019, a federal grand jury returned a fourteen-count indictment against Anderson. The indictment charged Anderson with: one count of conspiracy to distribute controlled substances, 21 U.S.C. § 846; nine counts of unlawful distribution of controlled substances, 21 U.S.C. §§ 841(a)(1); one count of conspiracy to commit healthcare fraud, 18 U.S.C. § 1349; and three counts of healthcare fraud, 18 U.S.C. § 1347. Anderson elected to proceed to trial.[1]

**B.**

Before trial, the government disclosed that it would call Dr. Timothy E. King, a physician specializing in pain medicine with board certifications in anesthesiology, pain management, and addiction science, to provide expert testimony on "whether [Anderson]'s medical records are consistent with the usual course of medical practice and whether the prescribing of controlled substances by [Anderson] was for legitimate medical purposes." DE 16, Resp., Page ID 81; *see also* DE 24, Hr'g Tr., Page ID 134. Anderson filed a motion *in limine* seeking to exclude King's proposed testimony on the grounds that it "lack[ed] a clear methodology or established standards" and because the government would be unable to "establish a foundation" for his testimony at trial. DE 13, Mot. in Limine, Page ID 70. The government responded in opposition, and the district court held a *Daubert*[2] hearing.

At the *Daubert* hearing, King testified about his methodology. He explained that he had reviewed the files of fifty of Anderson's patients and created a spreadsheet containing each patient's relevant medical history. King then compared this information to the following standards of care: "Establishment of an objective medical diagnosis"; "Documentation of a pertinent clinical history"; "Performance of a pertinent and targeted physical examination"; "Presence of an adequate and thorough clinical workup"; "Delineation of mental health risk

---

[1]The government dismissed one count of unlawful distribution of controlled substances, the conspiracy to commit healthcare fraud count, and two counts of healthcare fraud prior to trial.

[2]*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 597 (1993) (holding that district courts have a "gatekeeping role" in ensuring that "any and all scientific testimony or evidence admitted is not only relevant, but reliable").

factors”; “Delineation of co-morbid risk factors”; “Documentation of a defined treatment plan”; “Consideration of high-risk drug combinations (i.e. polypharmacy)”; “Consideration of risks associated with high dose opiates”; “Appropriate use of urine drug testing (UDT)”; “Appropriate use of (state provided) prescription drug monitoring data (PDMP)”; “Documentation of objective improvement in pain and function”; “Documentation and enforcement of drug related misbehavior”; and “Ongoing clinical evaluation, risk assessment, and patient monitoring.”  DE 16-2, King Aff., Page ID 99–101.  King explained that these standards of care were a “compendium of . . . categories” formulated by the Federation of State Medical Boards, the American Board of Anesthesiology, the American Board of Pain Medicine, and other organizations.  DE 24, Hr’g Tr., Page ID 177.

King testified that, after comparing the patient data to the standards of care, he created a narrative report in which he opined on whether the patients had been prescribed controlled substances for a legitimate medical purpose and within the usual course of professional practice. Of the fifty patients whose files he reviewed, twenty-eight were prescribed controlled substances. Anderson responded that although “this kind of testimony has been offered in other cases,” King’s methodology had not been peer-reviewed or verified by other physicians and was therefore unreliable.  *Id.* at Page ID 208.  Anderson also argued that King could not properly take a small subset of his patients and extrapolate across his entire medical practice.

The district court issued a written opinion after the *Daubert* hearing, denying Anderson’s motion *in limine*.  It found that King’s proposed testimony met the threshold of reliability set forth in Rule 702 of the Federal Rules of Evidence and *Daubert*.  The district court stated that any concerns about King’s methodology could be addressed on cross-examination and noted that courts have frequently admitted similar expert testimony regarding whether prescriptions were prescribed for a legitimate medical purpose.

## C.

At trial, the government called twenty-four witnesses, including former patients and employees of Marietta Medical, local pharmacists, King, DEA employees assigned to investigate

Anderson, and individuals associated with Medicare and Medicaid. Anderson called no witnesses of his own.

***Former Patients.*** The jury heard from several of Anderson's former patients, including JB. JB testified that she began to see Anderson in 2014, when she was pregnant with her first son. She recalled that during her first visit, Anderson walked into the patient room and did not ask her any questions except "what are you here for?" DE 83, Trial Tr. II, Page ID 1224. When JB told Anderson that she wanted a particular opioid, he prescribed it for her "no questions asked." *Id.* She further testified that, at the time, she "was an intravenous user . . . which was very obvious" because her "face would be picked up" and she had "marks all over [her] arms." *Id.* at Page ID 1227. Further, although Anderson knew she was pregnant, he did not cut JB off pain medications until she was eight-and-a-half months pregnant, when she had a "basketball belly." *Id.* at Page ID 1236–37. JB testified that medications prescribed by Anderson were the "easiest prescriptions I've ever got." *Id.* at Page ID 1237.

Another former patient, the confidential source recruited by the DEA, also testified against Anderson. He testified that, during his first appointment, he explained what medications he needed, and Anderson began writing out the prescriptions as he was speaking. Anderson did not give the patient a physical exam or otherwise ask about his medical history beyond what the patient volunteered. When the patient offered to have his medical records transferred to Marietta Medical, Anderson responded that doing so would be unnecessary. The patient returned about once a month to pick up prescriptions but did not always see Anderson. Other patients confirmed that physical examinations were performed rarely, if at all.

Patients also testified that when they ran out of medication, they would simply text or call Anderson requesting a new prescription. JB, for example, recalled that she once texted Anderson and informed him, falsely, that a friend had stolen her prescription, and requested a new prescription. Anderson told her to meet him at his office that night. She met him at 11:30 p.m., and Anderson "just wrote [her] the prescription" without asking any questions. DE 83, Trial Tr. II, Page ID 1226. Anderson also freely granted his patients' requests for stronger doses of medication.

***Former Employees*.** The government also presented the testimony of several of Anderson's former employees. Teddy Tackett, Anderson's property manager, testified that Anderson frequently left signed prescriptions for his staff to pass out to patients the next day. Anderson did so without having seen the patients, as Tackett testified that if Anderson had seen a patient the previous night, he would have given the prescription to the patient directly. Tackett also described the atmosphere at Marietta Medical as "chaos" due to Anderson's unpredictable hours and tardiness and large numbers of patients waiting for medications. DE 84, Trial Tr. III, Page ID 1335, 1337. Mollie Reed, the receptionist, testified that sometimes "[t]here would be patients spilling out into the steps, the street area waiting, smoking cigarettes. It was a crazy time." DE 87, Trial Tr. VI, Page ID 2112.

***Pharmacists*.** Several area pharmacists testified regarding Anderson's prescribing practices. Glenn Norosky, a pharmacist at Rite Aid, testified that patients sometimes attempted to refill their prescriptions too early; when Norosky refused to refill them, Anderson occasionally called him asking why he did not fill their prescriptions. Norosky noted that he found it "odd" that whenever he tried calling Anderson's office, he could never reach Anderson but Anderson would always be able to reach Norosky. DE 85 Trial Tr. IV, Page ID 1538–39. Norosky also testified that he filed two suspicious-prescribing reports against Anderson. He filed the first report after noticing that Anderson was writing an increasing number of prescriptions for opiates for young patients, many of whom were unfamiliar to Norosky.

Shawndra Parks, another local pharmacist, echoed concerns that Anderson was prescribing higher doses of pain medication to an increasing number of younger patients, a practice she characterized as a "red flag." DE 88, Trial Tr. VII, Page ID 2331. Christine Dearth, a pharmacist at CVS, testified that other pharmacists noticed Anderson's suspicious prescribing patterns and agreed as a group to stop filling prescriptions for pain medications written by Anderson.

***Dr. King*.** As he did at the *Daubert* hearing, King testified that he had reviewed fifty patient files taken from Marietta Medical. With respect to the twenty-eight patients who were prescribed controlled substances, King expressed the general opinion that Anderson "was not prescribing within the usual course of medical practice," DE 84, Trial Tr. III, Page ID 1490, and

therefore that the controlled substances that Anderson prescribed lacked a legitimate medical purpose, *id.* at Page ID 1491–92.  King explained that for these patients, Anderson failed to obtain an objective and legitimate medical diagnosis, perform a physical examination and workup to identify risk factors, formulate an appropriate treatment plan incorporating treatments other than controlled substances, and enforce compliance measures such as urine drug screenings and monitoring for aberrant behaviors.

King opined specifically on Anderson's prescribing practices with respect to each of the eight patients whose prescriptions formed the basis of the unlawful distribution counts.  He testified that in his opinion, each of the patients had been prescribed controlled substances outside the usual course of professional practice and without a legitimate medical purpose.  For example, King testified that patient KB had a "grossly abnormal urine drug screen" indicating the absence of two drugs he was being prescribed by Anderson—oxycodone and Adderall—and the presence of two drugs he was not prescribed—gabapentin, which increases the euphoric sensation of controlled substances, and a Norco-like medication.  DE 84, Trial Tr. III, Page ID 1497–1501.  King testified that there was no indication that Anderson spoke with KB about the abnormal drug screen, and that KB's medical file was essentially blank.

***Witnesses Affiliated with Medicare and Medicaid and Fraud Investigations.***  The jury also heard testimony about Anderson's noncompliance with Medicare and Medicaid requirements and the impact of Anderson's prescribing practices on those programs.  Heather Hire, a Medicaid administrator for the state, testified that Medicaid providers such as Anderson agree to render only medical services that are necessary and in compliance with federal law.  She explained that Medicaid would not pay for services that were rendered in contravention of state or federal law.  An employee of an entity that contracts with the Centers for Medicare and Medicaid Services to investigate fraud and waste testified that Medicare providers must render services in accordance with federal law.  She testified that Medicare would not pay for services or medications it knew were medically unnecessary or were prescribed in violation of state or federal law.

Joseph DiSalvio, Jr., a special agent investigator for the Ohio Attorney General's Medicaid Fraud Control Unit, identified twelve Medicaid patients among the twenty-eight

patients who had been prescribed opiates whose files were examined by King.  In total, Medicaid paid $13,097.88 for Schedule II through V substances for these twelve patients.  Andrew Ranck, a CPA who performs audits for Medicare, testified that from 2013 to 2016, the impact to Medicare of prescriptions written by Anderson was $7,488.91.

## D.

At the charge conference, the government sought to remove a good faith instruction pertaining to the unlawful distribution of controlled substances counts from its earlier-proposed jury instructions.  That instruction read, in relevant part:

> If a doctor dispenses a drug in <u>good faith</u> in medically treating a patient, then the doctor has dispensed the drug for a legitimate medical purpose in the usual course of medical practice.  That is, he has dispensed the drug lawfully.
>
> <u>Good faith</u> in this context means good intentions in the honest exercise of best professional judgment as to a patient's need.  It means the doctor acted in accordance with what he believed to be proper medical practice.  If you find the defendant acted in good faith in dispensing the drugs, then you must find him not guilty.

DE 26, Proposed Jury Instr., Page ID 240.

The government argued that there was no basis to issue this instruction under *United States v. Godofsky*, 943 F.3d 1011 (6th Cir. 2019).  *Godofsky*, the government argued, held that a physician's "subjective good faith" is irrelevant and that, in any case, Anderson had not elicited sufficient evidence at trial regarding his own good faith, either through a proffer or through direct or cross-examination.  DE 88, Trial Tr. VII, Page ID 2305, 2309.  Anderson objected, arguing that *Godofsky* was inapposite because the defendant there *did* receive a good faith instruction and the case on appeal instead centered on whether it was an objective good faith instruction or a subjective good faith instruction.

The district court took the matter under advisement.  The next day, the district court determined that "it would be error for the Court to include the good faith defense language" because "*Godofsky* is virtually on all fours with our case."  DE 89, Trial Tr. VIII, Page ID 2388. To Anderson's benefit, the district court noted that another set of instructions he planned to give the jury "maybe subsumes the good faith defense—or the good faith defense is subsumed in it."

*Id.* at Page ID 2390.  Accordingly, the district court removed the two paragraphs regarding good faith from the final jury instructions.

### E.

Anderson moved for a judgment of acquittal after the government presented its case, and the district court denied the motion.  The jury convicted Anderson on all ten counts, and Anderson appealed.

### II.

### A.

Anderson first argues that the district court abused its discretion in declining to give the proposed good faith instruction for the charges of unlawful distribution under 21 U.S.C. § 841(a).[3]  "We review a challenge to the trial court's denial of a requested jury instruction for abuse of discretion and will reverse only if the denied instruction was: '(1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concern[ed] a point so important in the trial that the failure to give it substantially impair[ed] the defendant's defense.'"  *Godofsky*, 943 F.3d at 1019 (quoting *United States v. Volkman*, 797 F.3d 377, 385 (6th Cir. 2015)).

### 1.

We first consider whether the government's withdrawn jury instruction was a correct statement of the law.  As judicial interpretation of § 841 has evolved in recent years, we briefly review its development.

The Controlled Substances Act prohibits "any person," "[e]xcept as authorized[,]" from "knowingly or intentionally" manufacturing, distributing, dispensing, or possessing controlled substances.  21 U.S.C. § 841(a).  Because doctors and physicians regularly prescribe controlled substances, the "except as authorized" clause has greater relevance when a physician is charged

---

[3]When Anderson objected to the government's effort to withdraw the instruction, the district court treated the instruction as if offered by Anderson.

with improperly exercising that power.  *See United States v. Moore*, 423 U.S. 122, 131–32 (1975).  A doctor's prescription is authorized within the meaning of § 841(a) when it is made "for a legitimate medical purpose . . . in the usual course of his professional practice."  21 C.F.R. § 1306.04(a).  "How to properly capture § 841(a)'s elements in a jury instruction—especially the 'except as authorized' proviso and the guidance provided by § 1306.04(a)—is a difficult question we have addressed before."  *United States v. Fabode*, Case No. 21-1491, 2022 WL 16825408, at *6 (6th Cir. Nov. 8, 2022).

At the time briefing in this case was completed, the binding precedent in this circuit was *Godofsky*.  *Godofsky* held that the subjective good faith of the defendant was irrelevant to the "except as authorized" clause for physicians tried under § 841(a).  *See* 943 F.3d at 1026–27.  However, after briefing in this case was completed, the Supreme Court decided *Ruan v. United States*, 142 S. Ct. 2370 (2022), holding that the mens rea standard of "knowingly or intentionally" applies to the entirety of § 841(a)—including the "except as authorized" clause. 142 S. Ct. at 2375.  That is, "once a defendant meets the burden of producing evidence that his or her conduct was 'authorized,' the Government must prove beyond a reasonable doubt that the defendant *knowingly or intentionally* acted in an unauthorized manner."  *Id.* at 2376 (emphasis added).  To prove this subjective standard of knowledge or intent, however, the parties can present circumstantial evidence of "objective criteria such as 'legitimate medical purpose' and 'usual course' of 'professional practice.'"  *Id.* at 2382 (quoting 21 C.F.R. § 1306.04(a)).

In light of *Ruan*, we must consider whether the good faith instruction that Anderson requested is a correct statement of the law.  After all, Anderson did not ask the district court to instruct the jury that it must find that he *knowingly* or *intentionally* prescribed controlled substances without authorization.  Instead, Anderson requested a good faith instruction that mentioned neither knowledge nor intent.[4]  And the Supreme Court gave limited counsel in *Ruan*

---

[4]The good faith instruction that Anderson requested is reproduced here:

If a doctor dispenses a drug in <u>good faith</u> in medically treating a patient, then the doctor has dispensed the drug for a legitimate medical purpose in the usual course of medical practice.  That is, he has dispensed the drug lawfully.

<u>Good faith</u> in this context means good intentions in the honest exercise of best professional judgment as to a patient's need.  It means the doctor acted in accordance with what he believed

regarding good faith instructions, stating only that "§ 841, like many criminal statutes, uses the familiar *mens rea* words 'knowingly or intentionally.'  It nowhere uses words such as 'good faith,' 'objectively,' 'reasonable,' or 'honest effort.'"  *Ruan*, 142 S. Ct. at 2381.

Only one circuit, the Eleventh, has addressed whether a good faith instruction can comport with *Ruan*.  After *Ruan* was decided and remanded, the Eleventh Circuit addressed the issue of whether a good faith instruction adequately informs a jury of the "knowledge or intent" requirement.  *United States v. Ruan*, 56 F.4th 1291 (11th Cir. 2023) ("*Ruan III*").  The opinion first distinguished between subjective and objective good faith instructions.  It noted that "[w]ithout further qualification, the phrase 'good faith' encompasses both subjective and objective good faith" and then concluded that "only the subjective version is appropriate."  *Id.* at 1297.  The court then remanded the case to the district court, concluding that the totality of the jury instructions failed to "convey that a subjective analysis was required for the 'except as authorized'" clause of § 841.  *Id.*  *Ruan III*, although it lacks perfect clarity, implies that a properly qualified subjective good faith instruction performs the same function as the "knowledge or intent" requirement identified by the Supreme Court.

The proposed good faith instruction did not contain any "further qualification" that made clear Anderson's subjective good faith was the relevant inquiry.  *See Ruan III*, 56 F.4th at 1297.  This is unsurprising, as Anderson conceded he wanted the jury to consider his objective good faith.  To the extent Anderson appeals the district court "declin[ing] to instruct the jury on the defense of objective 'good faith,'" the proposed jury instruction was not a correct statement of law.  Opening Br. at 12.

But assuming that the proposed good faith instruction concerns subjective good faith, we need not explore further whether there is any meaningful distinction between "subjective good faith" and "knowledge or intent."  Rather, we examine whether the instructions given here comport with *Ruan*'s directive and substantially cover the requested instruction.

---

to be proper medical practice.  If you find the defendant acted in good faith in dispensing the drugs, then you must find him not guilty.

DE 26, Proposed Jury Instr., Page ID 240.

**2.**

In charging the jury on the crime of distributing a controlled substance under § 841, the district court first explained the elements of the crime:

> First, the defendant knowingly or intentionally dispensed or distributed a Schedule II controlled substance, including fentanyl, Adderall, oxycodone and hydrocone; and,
>
> Second, that the defendant, Dr. Anderson, prescribed the drug without a legitimate medical purpose and outside the course of professional practice.

DE 89, Trial Tr. VIII, Page ID 2474.  The court then gave "more detailed instructions on some of these terms."  *Id.*  In describing terms related to the second element, it explained that:

> Although knowledge of the defendant cannot be established merely by demonstrating he was careless, knowledge may be inferred if the defendant deliberately blinded himself to the existence of a fact.  No one can avoid responsibility for a crime by deliberately ignoring the obvious.  If you are convinced that the defendant deliberately ignored a high probability that the controlled substance was distributed or dispensed without a legitimate medical purpose in the usual course of professional practice, then you may find that the defendant knew this was the case.

*Id.* at Page ID 2476–77.  The instruction given to the jury specifically covers the holding of *Ruan*, by referring continuously to the "knowledge of the defendant," his "deliberate ignorance," and if he "knew" that the prescriptions were dispensed illegitimately.  *Id.*  Such terms go beyond an objective view of the "usual course of professional practice" and instead direct the jury's attention to Anderson's subjective mindset in issuing the prescriptions.

The court goes on to further emphasize that knowledge, and no lesser level of culpability, is required to find Anderson guilty on this element:

> But you must be convinced beyond a reasonable doubt that the defendant was aware of a high probability that the controlled substances were distributed or dispensed other than for a legitimate medical purpose while acting in the usual course of professional practice, and that the defendant deliberately closed his eyes to what was obvious.  *Carelessness, or negligence, or foolishness on his part are not the same as knowledge and are not enough to find him guilty on this count*.

*Id.* at Page ID 2477 (emphasis added).  The instructions given by the court, though not expressed in the way Anderson requested, substantially cover the concept of knowledge through the

description of deliberate ignorance and the juxtaposition of "knowledge" with "[c]arelessness, negligence, or foolishness." *Id.*; *cf. United States v. Damra*, 621 F.3d 474, 502 (6th Cir. 2010) (finding that, in the tax evasion context, a good faith instruction was substantially covered by the court's instruction that the defendant had to have acted voluntarily and deliberately to violate known law to be found guilty). Because the jury instructions given in Anderson's case appear to comport with *Ruan* and to substantially cover the requested instruction, we reject Anderson's argument that the district court abused its discretion in failing to give a good faith instruction.

**B.**

We next address Anderson's evidentiary challenge. Anderson contends that the district court abandoned its gatekeeping function by admitting King's expert testimony. He asserts that King did not disclose his methodology in his reports, that his methodology has not been peer-reviewed, and that his expert opinion amounted to "scientific guesswork." CA6 R. 26, Corr. Appellant Br., at 42. We disagree.

"For expert testimony to be admissible, the court must find the expert to be: (1) qualified; (2) her testimony to be relevant; and (3) her testimony to be reliable." *United States v. LaVictor*, 848 F.3d 428, 441 (6th Cir. 2017) (citing *Daubert*, 509 U.S. at 589). District courts perform "a gatekeeping role in screening the reliability of expert testimony." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 668 (6th Cir. 2010) (internal quotation marks omitted). "We review a district court's decision to admit or exclude expert testimony for abuse of discretion." *United States v. Gardner*, 32 F.4th 504, 519 (6th Cir. 2022).

Anderson first argues that the district court abused its discretion in admitting King's testimony because King's narrative reports "contained bare conclusions" without providing "any citation or basis in medical or scientific reasoning." CA6 R. 26, Corr. Appellant Br., at 27. But during the *Daubert* hearing, King provided detailed testimony about the sources on which he relied and the manner in which he determined whether the patients whose files he reviewed were prescribed controlled substances in the usual course of professional practice and for a legitimate medical purpose. King further testified that he put each patient's medical record into a "forensic chronology" and then compared that chronology to the fifteen standards of care commonly

applied to pain management practices.  DE 24, Hr'g Tr., Page ID 143–44.  From there, King prepared a "forensic summary" describing whether each of the fifteen standards had been properly addressed for each patient.  *Id.* at Page ID 145.  Anderson's argument about the scientific inadequacy of King's reports is without merit.

Next, Anderson contends that the district court abdicated its gatekeeping function by failing to make any findings about the reliability of this methodology.  However, this assertion is belied by the record.  The district court issued a thorough written opinion in which it determined that "Dr. King's proposed expert testimony meets the reliability standard under Rule 702 and *Daubert*."  DE 29, Op. and Order, Page ID 265.  The district court also noted that King had submitted a declaration explaining that he relied on "generally accepted methodologies" and standards recognized by professional medical organizations.  *Id.* at Page ID 265–66.  The district court therefore fulfilled its duty to determine "whether the reasoning or methodology underlying the testimony is scientifically valid."  *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) (quoting *Daubert*, 509 U.S. at 592–93).

Anderson also assails King's fifteen standards of care, arguing that they are not contained in any textbook, peer-reviewed publication, or other scholarly resource.  the specific combination of standards King formulated has not been peer reviewed, King testified that the standards themselves were drawn from "*peer-reviewed* medical literature, . . . protocols, papers and recommendations put forth by our professional organizations."  DE 24, Hr'g Tr., Page ID 146 (emphasis added).  The district court also rejected this argument, observing that courts frequently admit expert testimony on the question of whether medications were prescribed with a legitimate medical purpose.  We agree and note that the Eleventh Circuit has previously rejected a challenge to the reliability of expert methodology based in part on a model policy from the Federation of State Medical Boards, which formed the primary basis of Dr. King's standards of care.  *See United States v. Azmat*, 805 F.3d 1018, 1040 (11th Cir. 2015); *see also* DE 24, Hr'g Tr., at Page ID 177.

We also reject Anderson's argument that King's testimony amounted to "scientific guesswork."  CA6 R. 26, Corr. Appellant Br., at 42.  As the district court noted in its opinion, King has "provided expert testimony in a number of other cases on similar issues and has never

had his testimony excluded at trial." DE 29, Op. and Order, Page ID 266. Furthermore, we have previously affirmed admission of expert testimony similar to that provided by King. *See Volkman*, 797 F.3d at 388 (expert testified "about a patient's condition and the prescriptions [the defendant] dispensed, [and] the Government would ask the expert whether he or she had an opinion as to whether the prescriptions fell within the scope of legitimate medical practice").

Finally, although Anderson devotes several pages of his briefing to challenging King's conclusions regarding the patients whose files he examined, we find that these arguments go "to the accuracy of the conclusions, not to the reliability of the testimony." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008). As we have stated, "[t]he task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *Id.* at 529–30. The district court did so here. Any other concerns about the reliability of King's testimony were properly addressed through cross-examination and opportunity to present a defense case. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Accordingly, we reject Anderson's challenge to the admission of King's expert testimony.

## C.

Finally, we address Anderson's sufficiency-of-the-evidence challenges. "We review a challenge to the sufficiency of the evidence in a criminal case de novo." *United States v. Woods*, 14 F.4th 544, 551 (6th Cir. 2021). In doing so, we ask "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Sadler*, 24 F.4th 515, 539 (6th Cir. 2022) (citation omitted). "All reasonable inferences must be made to support the jury verdict," *LaVictor*, 848 F.3d at 456, so the defendant "bears a very heavy burden" on a sufficiency-of-the-evidence challenge, *United States v. Hills*, 27 F.4th 1155, 1172 (6th Cir. 2022).

No. 21-3073                    *United States v. Anderson*                    Page 16

### 1.

Anderson first challenges his convictions for conspiracy to distribute controlled substances and unlawfully distributing controlled substances.  He contends that the evidence presented at trial showed that he committed mere malpractice and that, at worst, he practiced "with sloppy documentation or in a hurried fashion."  CA6 R. 26, Corr. Appellant Br., at 52, 55.  We conclude that sufficient evidence supported Anderson's convictions.

The indictment charged Anderson with nine counts of unlawful distribution of controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  The government voluntarily dismissed one count prior to trial, and the jury ultimately convicted Anderson of the remaining eight counts.  "In order to obtain a conviction under 21 U.S.C. § 841(a)(1) against a licensed physician . . . the government must show: '(1) That defendant distributed a controlled substance; (2) That he acted intentionally or knowingly; and (3) That defendant prescribed the drug without a legitimate medical purpose and outside the course of professional practice.'"  *United States v. Johnson*, 71 F.3d 539, 542 (6th Cir. 1995) (citation omitted).

The evidence at trial was sufficient to support Anderson's convictions for unlawful distribution of controlled substances.  The jury heard testimony from two of Anderson's former patients who testified that they either showed signs of or admitted to addiction when they came to him asking for pain medications.  JB, for example, testified that she showed "obvious" signs of being an intravenous drug user because her "face would be picked up" and she had marks on her arms, but that Anderson still prescribed her pain medications.  DE 83, Trial Tr. II, Page ID 1227.  Similarly, the DEA's confidential source testified that he told Anderson that he was "in full-blown withdrawal," but that Anderson still prescribed him medications.  DE 86, Trial Tr. V, Page ID 1951.  Patients also testified that they told Anderson which medications they wanted and that they would call or text him when they ran out.  Physical examinations were either infrequent, cursory, or non-existent.  Based on this evidence, a rational juror could conclude that Anderson knowingly prescribed controlled substances without a legitimate medical purpose and outside the usual course of professional practice.  *See United States v. Chaney*, 921 F.3d 572, 591 (6th Cir. 2019) (sustaining § 841(a) conviction where, among other evidence, former patient testified that "he was prescribed Percocet on his first visit to the clinic[ and] that he was

physically examined only once"); *Johnson*, 71 F.3d at 542 (rejecting sufficiency-of-the-evidence challenge to conviction under § 841(a) where some of the evidence showed that "defendant prescribed narcotics upon request and without medical examinations"); *see also United States v. Bek*, 493 F.3d 790, 799 (7th Cir. 2007) (upholding conviction under § 841(a) where evidence showed, among other things, that physician "disregard[ed] . . . blatant signs of drug abuse," and performed "uniform, superficial, and careless medical examinations").

King's expert testimony further established that Anderson's prescribing practices fell far short of professional practice. King based his testimony on his examination of patient files—including individuals whose prescriptions form the basis of the unlawful distribution counts—and observed that Anderson frequently failed to establish an objective and legitimate pain diagnosis, perform a physical examination, put together an appropriate treatment plan accounting for a patient's comorbidities, and enforce compliance measures. Based on these observations and his thirty years of experience, King concluded that Anderson was prescribing medications without a legitimate medical purpose and outside the usual course of professional practice. The testimony on this point was extensive and not, as Anderson argues, evidence of "mere malpractice." CA6 R. 26, Corr. Appellant Br., at 52.

Anderson also contends that he always prescribed his patients controlled substances "to treat what he believed to be their legitimate medical complaint." *Id.* at 55. But a reasonable jury could conclude that he was not acting in "good faith and with all due care" when he prescribed opioids to patients who were "merely faking symptoms." *Chaney*, 921 F.3d at 590.

For these reasons, we reject Anderson's sufficiency-of-the-evidence challenge to his convictions for conspiracy to distribute and distribution of controlled substances.

**2.**

Anderson also challenges the sufficiency of the evidence supporting his conviction for healthcare fraud. He explains that it was the pharmacies, not he, who billed Medicare and Medicaid, and argues that he did not know how the prescriptions would be paid for, nor did he personally profit from the prescription reimbursements. We disagree.

The indictment charged Anderson with one count of conspiracy to commit healthcare fraud in violation of 18 U.S.C. § 1349 and three counts of healthcare fraud in violation of 18 U.S.C. § 1347.  Prior to trial, the government voluntarily dismissed the conspiracy count and two healthcare fraud counts; the jury convicted Anderson on the remaining healthcare fraud count.  To prove a violation of § 1347, the government was required to prove that Anderson "(1) knowingly devised a scheme or artifice to defraud a health care benefit program in connection with the delivery of or payment for health care benefits, items, or services; (2) executed or attempted to execute this scheme or artifice to defraud; and (3) acted with intent to defraud."  *United States v. Semrau*, 693 F.3d 510, 524 (6th Cir. 2012) (quoting *United States v. Martinez*, 588 F.3d 301, 314 (6th Cir. 2009)).

Direct evidence of fraudulent intent is not required.  *United States v. Persaud*, 866 F.3d 371, 380 (6th Cir. 2017).  "[A] jury may consider circumstantial evidence and infer intent from evidence of efforts to conceal the unlawful activity, from misrepresentations, from proof of knowledge, and from profits."  *Id.* (quoting *United States v. Agbebiyi*, 575 F. App'x 624, 634 (6th Cir. 2014)).  A defendant is guilty of healthcare fraud if he "contributed to the execution of the scheme with intent to defraud."  *United States v. Hunt*, 521 F.3d 636, 645 (6th Cir. 2008).

The evidence presented at trial was sufficient to allow a rational juror to find beyond a reasonable doubt that Anderson caused claims to be submitted to Medicare and Medicaid for services that were medically unnecessary and in contravention of federal law.  To become a provider for Medicare and Medicaid, Anderson was required to sign a provider agreement in which he agreed to render services in accordance with federal law.  Witnesses affiliated with Medicare and Medicaid testified that neither program would pay for claims that were medically unnecessary or in contravention of federal law.  The jury heard extensive testimony that Anderson prescribed controlled substances to patients who filled those prescriptions at local pharmacies.  King testified that, in his expert opinion, Anderson prescribed controlled substances without a legitimate medical purpose and outside the usual course of professional practice.  Witnesses also testified about these prescriptions' monetary impact on Medicare and Medicaid.  Viewing this evidence in the light most favorable to the government, the evidence was sufficient to convict Anderson of healthcare fraud.

Anderson asserts that his conviction was improper because it was the pharmacies, not he, that billed Medicare and Medicaid.  This argument is unavailing.  The district court correctly instructed the jury that it need not "find that [Anderson] personally committed the acts charged in the indictment[;]" rather, it could convict him "if he willfully caused an act to be done which would be a federal crime if directly performed by him or another."  DE 89, Trial Tr. VIII, Page ID 2481.  In *Hunt*, we upheld the healthcare fraud conviction of a physician who caused his associate to bill Medicare for ultrasound tests that had not been medically necessary.  521 F.3d at 640, 645–46.  Similarly, in *United States v. Bertram*, 900 F.3d 743 (6th Cir. 2018), we upheld the healthcare fraud convictions of several defendants who started a urinalysis testing company and caused the testing laboratories to bill the insurer for tests that were not medically necessary.  *Id.* at 747, 751.

Anderson argues that, because he did not know how the medications he prescribed would be paid for, he could not have knowingly devised a scheme to defraud Medicare and Medicaid. But the record indicates that Anderson *did* know how these medication costs were covered.  For example, JB, a patient of Anderson's whose prescription forms the basis of one of the unlawful distribution counts, testified that she received coverage for prescription drugs through Medicaid. JB testified that Anderson once changed her medication from one opiate to another, "explain[ing] . . . that they would not—meaning the pharmacies would not cover it with my Medicaid, if it was—you know, if I filled it.  It wasn't going to be filled without me going to a different pharmacy and paying cash money."  DE 83, Trial Tr. II, Page ID 1243.  A rational juror could therefore conclude that Anderson knew at least some of the prescriptions he wrote were being paid for by healthcare benefit programs.

Next, Anderson argues that he did not profit from the prescription reimbursements and therefore did not have the requisite intent to defraud.  However, proof that a defendant profited from an alleged scheme to defraud is not required to obtain a conviction under § 1347; it is merely circumstantial evidence of intent to defraud.  *See Persaud*, 866 F.3d at 380.

The government presented sufficient evidence of intent to defraud to convict Anderson of healthcare fraud.  *See United States v. Webb*, 655 F.3d 1238, 1258 (11th Cir. 2011) (per curiam) (explaining that "the type of health care fraud here involved Webb's prescribing controlled

No. 21-3073                         *United States v. Anderson*                         Page 20

substances for other than legitimate medical purposes, and having pharmacies submit claims for reimbursement to health insurers on the basis of his prescriptions"); *Bek*, 493 F.3d at 801 (affirming conviction for aiding and abetting healthcare fraud where trial testimony showed that defendant "was aware that he prescribed unnecessary medication and that the health care benefit programs would ultimately pay some (or all) of the costs of those medically unnecessary drugs."). Therefore, we reject Anderson's challenge to the sufficiency of the evidence supporting his healthcare fraud conviction.

**III.**

For the foregoing reasons, we affirm.

---

## CONCURRING IN PART AND DISSENTING IN PART

---

HELENE N. WHITE, Circuit Judge, concurring in part and dissenting in part.

I concur in the affirmance of the admission of King's expert testimony and the rejection of Anderson's challenges to the sufficiency of the evidence. I dissent, however from Section II.A.2 of the majority opinion, which concludes that the jury instructions comport with *Ruan v. United States*, 142 S. Ct. 2370 (2022), and substantially covered Anderson's requested good-faith instruction.

When the district court charged the jury on the 21 U.S.C. § 841 count, it began by distinguishing between § 841's two elements. It instructed that, for a guilty verdict, the jury had to find, first, that Anderson had "knowingly or intentionally dispensed or distributed" the controlled substance and, second, that Anderson "prescribed the drug without a legitimate medical purpose and outside the course of professional practice." R.89, PID 2474. Unlike the instruction on the first element, the second element's instruction identified no *mens rea* requirement. The Supreme Court's *Ruan* opinion, however, teaches that the second element too must be performed knowingly or intentionally. 142 S. Ct. at 2375. Without such clarification, this charge by itself does not satisfy *Ruan*.

As the majority notes, the district court also gave a more detailed instruction in its discussion of deliberate indifference. It charged:

> Although knowledge of the defendant cannot be established merely by demonstrating he was careless, knowledge may be inferred if the defendant deliberately blinded himself to the existence of a fact. No one can avoid responsibility for a crime by deliberately ignoring the obvious. If you are convinced that the defendant deliberately ignored a high probability that the controlled substance was distributed or dispensed without a legitimate medical purpose in the usual course of professional practice, then you may find that the defendant knew that this was the case. But you must be convinced beyond a reasonable doubt that the defendant was aware of a high probability that the controlled substances were distributed or dispensed other than for a legitimate medical purpose while acting in the usual course of professional practice, and that the defendant deliberately closed his eyes to what was obvious. Carelessness, or

negligence, or foolishness on his part are not the same as knowledge and are not enough to find him guilty on this count.

R.89, PID 2476–77.  This instruction comes close to, but falls short of, *Ruan*'s requirement.

The instruction tells the jury that it can infer knowledge if it finds that Anderson deliberately ignored obvious facts; it does not inform the jury that to return a guilty verdict it had to find that Anderson knew or intended that he was prescribing the controlled substances without a legitimate medical purpose outside the usual course of professional practice.  Yet, the second element does not depend on perceiving or ignoring probabilities.  Anderson either understood and intended to prescribed controlled substances without a legitimate medical purpose in the usual course of professional practice, or he did not.  That is, the instruction does not further clarify that both elements require the "knowledge or intent" *mens rea*.  Telling the jury that carelessness, negligence, or foolishness is insufficient is not tantamount to instructing what mental state is required.

Accordingly, I part ways with the majority in that I do not read these two instructions, alone and in tandem, to comport with *Ruan*.  But I also would go further than the majority and recognize that Anderson's requested good-faith instruction comports with *Ruan*.  Anderson's requested instruction is near-identical to that in *United States v. Godofsky*, 943 F.3d 1011, 1019 (6th Cir. 2019).  Anderson's requested good faith instruction reads:

> If a doctor dispenses a drug in <u>good faith</u> in medically treating a patient, then the doctor has dispensed the drug for a legitimate medical purpose in the usual course of medical practice.  That is, he has dispensed the drug lawfully.
>
> <u>Good faith</u> in this context means good intentions in the honest exercise of best professional judgment as to a patient's need.  It means the doctor acted in accordance with what he believed to be proper medical practice.  If you find the defendant acted in good faith in dispensing the drugs, then you must find him not guilty.

R.26, PID 240.  The requested instruction in *Godofsky* reads:

> It is the theory of the defense that Dr. Godofsky treated his patients in good faith.  If a physician dispenses a drug in good faith in the course of medically treating a patient, then the doctor has dispensed the drug for a legitimate medical purpose in the usual course of accepted medical practice.  That is, he has dispensed the drug lawfully.

'Good faith' in this context means good intentions and an honest exercise of professional judgment as to a patient's medical needs. It means that the defendant acted in accordance with what he reasonably believed to be proper medical practice. In considering whether the Defendant acted with a legitimate medical purpose in the course of usual professional practice, you should consider all of the Defendant's actions and the circumstances surrounding them. If you find that the Defendant acted in good faith in dispensing the drugs charged in these counts of the superseding indictment, then you must find the Defendant not guilty on those counts.

943 F.3d at 1022 (brackets omitted). The *Godofsky* Court recognized that this good-faith instruction "means an individual, personal, or subjective 'good faith,'" requiring jurors to "acquit him if they found that he might have held a personal belief that such prescriptions would benefit his patients." *Id.* at 1026. In *Godofsky*, we rejected this instruction as an incorrect statement of law. *Id.* at 1027. But *Ruan* shows that the instruction accurately stated the law. That is, both instructions "perform[] the same function as the 'knowledge or intent' requirement identified" in *Ruan*. *See supra* Section II.A.1 (discussing *United States v. Ruan*, 56 F.4th 1291 (11th Cir. 2023)). As a result, I further disagree that the given instructions in Anderson's trial substantially cover Anderson's requested good-faith instruction.[1]

I respectfully dissent from Section II.A.2.

---

[1] I do not agree that Anderson conceded the issue. Anderson objected when the district court declined to give the requested instruction, and he filed his briefing on appeal prior to the Supreme Court's decision in *Ruan*.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 21-3073

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

      v.

ROGER DALE ANDERSON,

      Defendant - Appellant.

> **FILED**
> Apr 17, 2023
> DEBORAH S. HUNT, Clerk

Before:  GIBBONS, WHITE, and NALBANDIAN, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Columbus.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk

# Attachment B

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No.:  1:06CR367 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Judge Lesley Wells |
| | ) | |
| | ) | |
| FAYEZ DAMRA, et al. | ) | **UNITED STATES' PROPOSED** |
| | ) | **JURY INSTRUCTIONS** |
| | ) | |
| Defendants. | ) | |

Now comes the United States of America, by and through its counsel Gregory A. White, United States Attorney for the Northern District of Ohio, and James V. Moroney, Assistant United States Attorney, and respectfully requests that the Court charge the jury with the following instructions.

- ii -

The United States reserves the right to submit amended, additional or alternative instructions on any aspect of this case should the Court or the circumstances require.

Respectfully submitted,

GREGORY A. WHITE
United States Attorney

By:      /s/ James V. Moroney
James V. Moroney
Assistant U.S. Attorney
Registration No. 0019064
U.S. Court House, Suite 400
801 West Superior Avenue
Cleveland, Ohio  44113-1852
Tel. No.:  (216) 622-3827
Fax No.:  (216) 522-4041
james.moroney@usdoj.gov

- iii -

INDEX OF PROPOSED JURY INSTRUCTIONS

**INSTRUCTION**                 **PAGE**
 **NUMBER**

1 Introduction.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2 Juror's Duties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

3 Presumption of Innocence; Burden of Proof; Reasonable Doubt. . . . . . . . . . . . . . . . . . . 3

4 Evidence Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5 Consideration of Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

6 Direct and Circumstantial Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7 Credibility of Witnesses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

8 Number of Witnesses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

9 Objections. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

10 Introduction.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

11 On or About.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

12 Inferring Required Mental State.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

13 Conspiracy--Membership in an agreement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

14 Acts and declarations of co-conspirators. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

15 "Overt act"--Defined. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

16  Conspiracy to Defraud United States.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

17 Count 2:  The statute defining the offense charged.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

18 Count 2:  The essential elements of the offense charged.. . . . . . . . . . . . . . . . . . . . . . . . . 20

19 "Attempts in any manner to evade or defeat any tax"--Explained. . . . . . . . . . . . . . . . . . 21

20 Proof of precise amount of tax owed not necessary.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

21 "Willfully"--Defined.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

23 Defendant's Election not to Testify or Present Evidence. . . . . . . . . . . . . . . . . . . . . . . . . 25

24 Defendant's Testimony (if applicable). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

**25 Expert Testimony** .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **27**

**26 Introduction.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **28**

**27 Deliberate ignorance--Explained.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **29**

**28 Charts and summaries--Not admitted; admitted.**. . . . . . . . . . . . . . . . . . . . . . . . . . . **30**

**30 Duty to Deliberate.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **32**

**31 Punishment.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **33**

**32 Verdict Limited to Charges Against This Defendant.** . . . . . . . . . . . . . . . . . . . . . . . . **34**

**33 Court Has No Opinion.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **35**

**1 Introduction**

(1) Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

(2) I will start by explaining your duties and the general rules that apply in every criminal case.

(3) Then I will explain the elements, or parts, of the crimes that the defendant is accused of committing.

[(4) Then I will explain the defendant's position.]

(5) Then I will explain some rules that you must use in evaluating particular testimony and evidence.

(6) And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

(7) Please listen very carefully to everything I say.

Authority: Sec. 1.01, Sixth Circuit Pattern Criminal Jury Instructions, 2005 Edition.

1

**2 Juror's Duties**

(1) You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

(2) Your second duty is to take the law that I give you, apply it to the facts, and decide if the government has proved the defendant guilty beyond a reasonable doubt. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

(3) The lawyers have talked about the law during their arguments. But if what they said is different from what I say, you must follow what I say. What I say about the law controls.

(4) Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

Authority: Sec. 1.02, Sixth Circuit Pattern Criminal Jury Instructions, 2005 Edition.

2

**3 Presumption of Innocence; Burden of Proof; Reasonable Doubt**

(1) As you know, the defendant has pleaded not guilty to the crimes charged in the indictment. The indictment is not any evidence at all of guilt. It is just the formal way that the government tells the defendant what crime he is accused of committing. It does not even raise any suspicion of guilt.

(2) Instead, the defendant starts the trial with a clean slate, with no evidence at all against him, and the law presumes that he is innocent. This presumption of innocence stays with him unless the government presents evidence here in court that overcomes the presumption, and convinces you beyond a reasonable doubt that he is guilty.

(3) This means that the defendant has no obligation to present any evidence at all, or to prove to you in any way that he is innocent. It is up to the government to prove that he is guilty, and this burden stays on the government from start to finish. You must find the defendant not guilty unless the government convinces you beyond a reasonable doubt that he is guilty.

(4) The government must prove every element of each of the crimes charged beyond a reasonable doubt. Proof beyond a reasonable doubt does not mean proof beyond all possible doubt. Possible doubts or doubts based purely on speculation are not reasonable doubts. A reasonable doubt is a doubt based on reason and common sense. It may arise from the evidence, the lack of evidence, or the nature of the evidence.

(5) Proof beyond a reasonable doubt means proof which is so convincing that you would not hesitate to rely and act on it in making the most important decisions in your own lives. If you are convinced that the government has proved the defendant guilty beyond a reasonable doubt, say so by returning a guilty verdict. If you are not convinced, say so by returning a not guilty verdict.

Authority: Sec. 1.03, Sixth Circuit Pattern Criminal Jury Instructions, 2005 Edition.

3

**4 Evidence Defined**

(1) You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

(2) The evidence in this case includes only what the witnesses said while they were testifying under oath; the exhibits that I allowed into evidence; the stipulations that the lawyers agreed to; and the facts that I have judicially noticed.

(3) Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

(4) During the trial I did not let you hear the answers to some of the questions that the lawyers asked. I also ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

(5) Make your decision based only on the evidence, as I have defined it here, and nothing else.

 Authority: Sec. 1.04, Sixth Circuit Pattern Criminal Jury Instructions, 2005 Edition.

4

**5 Consideration of Evidence**

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

Authority: Sec. 1.05, Sixth Circuit Pattern Criminal Jury Instructions, 2005 Edition.

**6 Direct and Circumstantial Evidence**

(1) Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."

(2) Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

(3) Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

(4) It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, or say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

Authority: Sec. 1.06, Sixth Circuit Pattern Criminal Jury Instructions, 2005 Edition.

6

**7 Credibility of Witnesses**

(1) Another part of your job as jurors is to decide how credible or believable each witness was. This is your job, not mine. It is up to you to decide if a witness's testimony was believable, and how much weight you think it deserves. You are free to believe everything that a witness said, or only part of it, or none of it at all. But you should act reasonably and carefully in making these decisions.

(2) Let me suggest some things for you to consider in evaluating each witness's testimony.

(A) Ask yourself if the witness was able to clearly see or hear the events. Sometimes even an honest witness may not have been able to see or hear what was happening, and may make a mistake.

(B) Ask yourself how good the witness's memory seemed to be. Did the witness seem able to accurately remember what happened?

(C) Ask yourself if there was anything else that may have interfered with the witness's ability to perceive or remember the events.

(D) Ask yourself how the witness acted while testifying. Did the witness appear honest? Or did the witness appear to be lying?

(E) Ask yourself if the witness had any relationship to the government or the defendant, or anything to gain or lose from the case, that might influence the witness's testimony. Ask yourself if the witness had any bias, or prejudice, or reason for testifying that might cause the witness to lie or to slant the testimony in favor of one side or the other.

(F) Ask yourself if the witness testified inconsistently while on the witness stand, or if the witness said or did something [or failed to say or do something] at any other time that is inconsistent with what the witness said while testifying. If you believe that the witness was inconsistent, ask yourself if this makes the witness's testimony less believable. Sometimes it may; other times it may not. Consider whether the inconsistency was about something important, or about some unimportant detail. Ask yourself if it seemed like an innocent mistake, or if it seemed

7

deliberate.

(G) And ask yourself how believable the witness's testimony was in light of all the other evidence. Was the witness's testimony supported or contradicted by other evidence that you found believable? If you believe that a witness's testimony was contradicted by other evidence, remember that people sometimes forget things, and that even two honest people who witness the same event may not describe it exactly the same way.

(3) These are only some of the things that you may consider in deciding how believable each witness was. You may also consider other things that you think shed some light on the witness's believability. Use your common sense and your everyday experience in dealing with other people. And then decide what testimony you believe, and how much weight you think it deserves.

Authority: Sec. 1.07, Sixth Circuit Pattern Criminal Jury Instructions, 2005 Edition.

**8 Number of Witnesses**

(1) One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference.

(2) Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

Authority: Sec. 1.08, Sixth Circuit Pattern Criminal Jury Instructions, 2005 Edition.

**9 Objections**

(1) There is one more general subject that I want to talk to you about before I begin explaining the elements of the crime charged.

(2) You heard objections to some of the things that were said or done during the trial. Do not hold that against either side. There is a duty to object whenever a participant in the trial thinks that something is not permitted by the rules of evidence. Those rules are designed to make sure that both sides receive a fair trial.

(3) And do not interpret my rulings on their objections as any indication of how I think the case should be decided. My rulings were based on the rules of evidence, not on how I feel about the case. Remember that your decision must be based only on the evidence that you saw and heard here in court.

Authority: Sec. 1.09, Sixth Circuit Pattern Criminal Jury Instructions, 2005 Edition.

10

**10 Introduction**

     (1) That concludes the part of my instructions explaining your duties and the general rules that apply in every criminal case. In a moment, I will explain the elements of the crimes that the defendant is accused of committing.

     (2) But before I do that, I want to emphasize that the defendant is only on trial for the particular crimes charged in the indictment.  Your job is limited to deciding whether the government has proved the crimes charged.

Authority: Sec. 2.01, Sixth Circuit Pattern Criminal Jury Instructions, 2005 Edition.

**11 On or About**

(1) Next, I want to say a word about the dates mentioned in the indictment.

(2) The indictment charges that the crime charged in Count 1 happened "in approximately" May 1998, and continued to at least the end of August, 2001, and that the crime charged in Count 2 happened "from on or about April 20, 2000, and continuing through at least August 7, 2000. The government does not have to prove that these crimes happened during these exact dates. But the government must prove that the crimes happened reasonably close to these dates.

Authority: Sec. 2.04, Sixth Circuit Pattern Criminal Jury Instructions, 2005 Edition.

12

**12 Inferring Required Mental State**

 (1) Next, I want to explain something about proving a defendant's state of mind.

 (2) Ordinarily, there is no way that a defendant's state of mind can be proved directly, because no one can read another person's mind and tell what that person is thinking.

 (3) But a defendant's state of mind can be proved indirectly from the surrounding circumstances. This includes things like what the defendant said, what the defendant did, how the defendant acted, and any other facts or circumstances in evidence that show what was in the defendant's mind.

 (4) You may also consider the natural and probable results of any acts that the defendant knowingly did or did not do, and whether it is reasonable to conclude that the defendant intended those results. This, of course, is all for you to decide.

Authority: Sec. 2.08, Sixth Circuit Pattern Criminal Jury Instructions, 2005 Edition.

13

**13 Conspiracy--Membership in an agreement**

Count 1 of the indictment charges that the defendant engaged in a conspiracy to defraud the United States.  Before the jury may find that Defendant , or any other person, became a member of the conspiracy charged in Count 1 of the indictment, the evidence in the case must show beyond a reasonable doubt that Defendant knew the purpose or goal of the agreement or understanding and deliberately entered into the agreement intending, in some way, to accomplish the goal or purpose by this common plan or joint action.

Merely associating with others and discussing common goals, mere similarity of conduct between or among such persons, merely being present at the place where a crime takes place or is discussed, or even knowing about criminal conduct does not, of itself, make someone a member of the conspiracy or a conspirator.

Authority: O'Malley. Grenig, Lee, Federal Jury Practice and Instructions, § 31.05 (5th ed. 2000).

14

**14 Acts and declarations of co-conspirators**

Evidence has been received in this case that certain persons, who are alleged in Count 1 of the indictment to be co-conspirators of Defendant , have done or said things during the existence or life of the alleged conspiracy in order to further or advance its objections.

Such acts and statements of these other individuals may be considered by you in determining whether or not the government has proven the charges in Count 1 of the indictment against Defendant .

Since these acts may have been performed and these statements may have been made outside the presence of Defendant and even done or said without the defendant's knowledge, these acts or statements should be examined with particular care by you before considering them against the defendant who did not do the particular act or make the particular statement.

Authority: O'Malley. Grenig, Lee, Federal Jury Practice and Instructions, § 31.06 (5th ed. 2000).

15

**15 "Overt act"--Defined**

In order to sustain its burden of proof under Count 1 of the indictment, the government must prove beyond a reasonable doubt that one of the members of the alleged conspiracy or agreement knowingly performed at least one overt act and that this overt act was performed during the existence or life of the conspiracy and was done to somehow further the goal(s) of the conspiracy or agreement.

The term "overt act" means some type of outward, objective action performed by one of the parties to or one of the members of the agreement or conspiracy which evidences that agreement.

Although you must unanimously agree that the same overt act was committed, the government is not required to prove more than one of the overt acts charged.

The overt act may, but for the alleged illegal agreement, appear totally innocent and legal.

Authority: O'Malley. Grenig, Lee, Federal Jury Practice and Instructions, § 31.07 (5th ed. 2000).

16

**16  Conspiracy to Defraud United States**

(1) Count 1 of the indictment charges that beginning in approximately May 1998, and continuing to at least the end of August, 2001, defendant and at least one other person came to some type of agreement or understanding to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, and assessment, of income taxes owed by the defendants, by other individuals, and by AIM.

(2) For you to find the defendant guilty of the crime of conspiring to impair, obstruct, or defeat the lawful government functions of the Internal Revenue Service of the Treasury Department, the government must prove each and every one of the following elements beyond a reasonable doubt:

(A) First, that a "conspiracy" or "agreement" existed, as detailed in Count 1 of the indictment;

(B) Second, that the defendant knowingly and voluntarily joined the conspiracy.

(C) And third, that a member of the conspiracy did one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy.

(3) Overt Acts: One of the elements that the government must prove is that a member of the conspiracy committed at least one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy.  The indictment lists 18 overt acts. The government does not have to prove that all these acts were committed, or that any of these acts were themselves illegal.  But the government must prove that at least one of these acts was committed by a member of the conspiracy, and that it was committed for the purpose of advancing or helping the conspiracy. This is essential.

17

(4) If you are convinced that the government has proved all of the elements, say so by returning a guilty verdict on this charge. If you have a reasonable doubt about any one of the elements, then you must find the defendant not guilty of this charge.

**Authority**:      Devitt, Blackmar, and O'Malley, Federal Jury Practice and Instructions (4th Ed. 1990), Section 28.01, et seq.; Sixth Circuit Pattern Jury Instruction 3.01 et seq.; United States v. Bostic, 480 F.2d 965, 968 (6th Cir. 1973);

18

**17 Count 2:  The statute defining the offense charged**

Count 2 of the indictment charges a violation of Section 7201 of Title 26 of the United States Code, which provides, in part, that

"Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall …be guilty of an offense against the United States."

Authority: O'Malley. Grenig, Lee, Federal Jury Practice and Instructions, § 67.02 (5th ed. 2000).

19

**18 Count 2:  The essential elements of the offense charged**

In order to sustain its burden of proof for the crime of willfully attempting to evade or defeat a tax as charged in Count 2 of the indictment, the government must prove the following three (3) essential elements beyond a reasonable doubt:

One: A substantial income tax was due from Applied Innovative Management, Inc. (AIM), a corporation owned and controlled by the Defendant, in addition to that declared on the defendant's tax return;

Two: The defendant attempted to evade or defeat this additional tax as detailed in the indictment; and

Three: In attempting to evade or defeat such additional tax, Defendant acted willfully.

Authority: O'Malley. Grenig, Lee, Federal Jury Practice and Instructions, § 67.03 (5th ed. 2000).

20

**19 "Attempts in any manner to evade or defeat any tax"--Explained**

The phrase "attempts in any manner to evade or defeat any tax" involves two things: first, the formation of an intent to evade or defeat a tax; and second, willfully performing some act to accomplish the intent to evade or defeat that tax.

The phrase "attempts in any manner to evade or defeat any tax" contemplates and charges that Defendant knew and understood that for the taxable years 1998 and 1999, the corporation AIM owed a substantial federal income tax, substantially more federal income tax than was declared on AIM's federal tax return for each year, and then tried in some way to avoid that additional tax.

In order to show an "attempt(s) in any manner to evade or defeat any tax", therefore, the government must prove beyond a reasonable doubt that Defendant intended to evade or defeat the tax due, and that Defendant also willfully did some affirmative act in order to accomplish this intent to evade or defeat that tax.

Authority: O'Malley. Grenig, Lee, Federal Jury Practice and Instructions, § 67.04 (5th ed. 2000).

21

**20 Proof of precise amount of tax owed not necessary**

The government must prove beyond a reasonable doubt that Defendant willfully attempted to evade or defeat a substantial portion of the tax owed by AIM.

Although the government must prove a willful attempt to evade a substantial portion of tax, the government is not required to prove the precise amount of additional tax owed.

Authority: O'Malley. Grenig, Lee, <u>Federal Jury Practice and Instructions</u>, § 67.08 (5th ed. 2000).

**21 "Willfully"--Defined**

In order to sustain its burden of proof for the crime of as charged in Count 2 of the indictment, the government must prove beyond a reasonable doubt that Defendant acted "willfully".

To act willfully means to act voluntarily and deliberately and intending to violate a known legal duty.

Negligent conduct is not sufficient to constitute willfulness.

Authority: O'Malley. Grenig, Lee, Federal Jury Practice and Instructions, § 67.20 (5th ed. 2000).

**22 Introduction**

That concludes the part of my instructions explaining the elements of the crimes charged. Next I will explain some rules that you must use in considering some of the testimony and evidence.

Authority: Sec. 7.01, Sixth Circuit Pattern Criminal Jury Instructions, 2005 Edition.

**23 Defendant's Election not to Testify or Present Evidence (if applicable)**

(1) A defendant has an absolute right not to testify [or present evidence]. The fact that he did not testify [or present any evidence] cannot be considered by you in any way. Do not even discuss it in your deliberations.

(2) Remember that it is up to the government to prove the defendant guilty beyond a reasonable doubt. It is not up to the defendant to prove that he is innocent.

Authority: Sec. 7.02A, Sixth Circuit Pattern Criminal Jury Instructions, 2005 Edition.

25

**24 Defendant's Testimony (if applicable)**

(1) You have heard the defendant testify. Earlier, I talked to you about the "credibility" or the "believability" of the witnesses. And I suggested some things for you to consider in evaluating each witness's testimony.

(2) You should consider those same things in evaluating the defendant's testimony.

Authority: Sec. 7.02B, Sixth Circuit Pattern Criminal Jury Instructions, 2005 Edition.

26

**25 Expert Testimony**

(1) You have heard the testimony of Special Agent Gary Rasoletti, who testified as an expert witness to certain computations of income taxes due and owing.  An expert witness has special knowledge or experience that allows the witness to give an opinion.

(2) You do not have to accept an expert's opinion. In deciding how much weight to give it, you should consider the witness's qualifications and how he reached his conclusions.

(3) Remember that you alone decide how much of a witness's testimony to believe, and how much weight it deserves.

Authority: Sec. 7.03, Sixth Circuit Pattern Criminal Jury Instructions, 2005 Edition.

**26 Introduction**

(1) Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

(2) The first thing that you should do in the jury room is choose someone to be your foreperson. This person will help to guide your discussions, and will speak for you here in court.

(3) Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson.

(4) If you want to see any of the exhibits that were admitted in evidence, you may send me a message, and those exhibits will be provided to you.

(5) One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 6-6, or 8-4, or whatever your vote happens to be. That should stay secret until you are finished.

Authority: Sec. 8.01, Sixth Circuit Pattern Criminal Jury Instructions, 2005 Edition.

**27 Deliberate ignorance--Explained**

The government may prove that Defendant acted "knowingly" by proving, beyond a reasonable doubt, that this defendant deliberately closed his eyes to what would otherwise have been obvious to him. No one can avoid responsibility for a crime by deliberately ignoring what is obvious. A finding beyond a reasonable doubt of an intent of Defendant to avoid knowledge or enlightenment would permit the jury to find knowledge. Stated another way, a person's knowledge of a particular fact may be shown from a deliberate or intentional ignorance or deliberate or intentional blindness to the existence of that fact.

It is, of course, entirely up to you as to whether you find any deliberate ignorance or deliberate closing of the eyes and any inferences to be drawn from any such evidence.

You may not conclude that Defendant had knowledge, however, from proof of a mistake, negligence, carelessness, or a belief in an inaccurate proposition.

Authority: O'Malley. Grenig, Lee, Federal Jury Practice and Instructions, § 17.09 (5th ed. 2000).

29

**28 Charts and summaries--Not admitted; admitted**

Not Admitted Into Evidence

Charts or summaries have been prepared by and shown to you during the trial for the purpose of explaining facts that are allegedly contained in books, records, and other documents which are in evidence in the case. Such charts or summaries are not evidence in this trial or proof of any fact. If you find that these charts or summaries do not correctly reflect facts or figures shown by the evidence in the case, you should disregard the charts or summaries.

In other words, such charts or summaries are used only as a matter of convenience for you and to the extent that you find they are not, in truth, summaries of facts or figures shown by the evidence in the case, you can disregard them entirely.

Admitted Into Evidence

Charts or summaries have been prepared by , have been admitted into evidence and have been shown to you during the trial for the purpose of explaining facts that are allegedly contained in books, records, or other documents which are also in evidence in the case. You may consider the charts and summaries as you would any other evidence admitted during the trial and give them such weight or importance, if any, as you feel they deserve.

Authority: O'Malley. Grenig, Lee, Federal Jury Practice and Instructions, § 14.02 (5th ed. 2000).

30

**29 Unanimous Verdict**

(1) Your verdict, whether it is guilty or not guilty, must be unanimous.

(2) To find the defendant guilty, every one of you must agree that the government has overcome the presumption of innocence with evidence that proves his guilt beyond a reasonable doubt.

(3) To find him not guilty, every one of you must agree that the government has failed to convince you beyond a reasonable doubt.

(4) Either way, guilty or not guilty, your verdict on each count must be unanimous.

Authority: Sec. 8.03, Sixth Circuit Pattern Criminal Jury Instructions, 2005 Edition.

**30 Duty to Deliberate**

(1) Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

(2) But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that--your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

(3) No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

(4) Listen carefully to what the other jurors have to say, and then decide for yourself if the government has proved the defendant guilty beyond a reasonable doubt.

Authority: Sec. 8.04, Sixth Circuit Pattern Criminal Jury Instructions, 2005 Edition.

**31 Punishment**

(1) If you decide that the government has proved the defendant guilty, then it will be my job to decide what the appropriate punishment should be.

(2) Deciding what the punishment should be is my job, not yours. It would violate your oaths as jurors to even consider the possible punishment in deciding your verdict.

(3) Your job is to look at the evidence and decide if the government has proved the defendant guilty beyond a reasonable doubt.

Authority: Sec. 8.05, Sixth Circuit Pattern Criminal Jury Instructions, 2005 Edition.

33

**32 Verdict Limited to Charges Against This Defendant**

Remember that the defendant is only on trial for the particular crimes charged in the indictment.  Your job is limited to deciding whether the government has proved each crime charged.

Authority: Sec. 8.08, Sixth Circuit Pattern Criminal Jury Instructions, 2005 Edition.

**33 Court Has No Opinion**

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You decide for yourselves if the government has proved the defendant guilty beyond a reasonable doubt.

Authority: Sec. 8.09, Sixth Circuit Pattern Criminal Jury Instructions, 2005 Edition.

CERTIFICATE OF SERVICE

This is to certify that on this   23rd   day of April, 2007, a copy of the foregoing

Government's Proposed Jury Instructions was filed electronically.  Notice of this filing will be

sent by operation of the Court's electronic filing system to all parties indicated on the electronic

filing receipt.  All other parties will be served by regular U.S. mail.  Parties may access this filing

through the Court's system.


 /s/ James V. Moroney
James V. Moroney
Assistant U. S. Attorney

36